**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JOHN KILLINGSWORTH, | No. CV 03-1950-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; DAVE GONZALES, | [Not For Publication] |
| Defendants. | |

Before the court is Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses (doc. # 283) and Memorandum (doc. # 294), the Response (doc. # 295), and the Reply (doc. # 299).  Though the motion addresses taxation of costs under federal and state statutes, the federal statute applies in this federal court.  Since the clerk taxed costs on December 27, 2005(doc. # 297) and no review of that taxation was sought, the portion of the motion that addresses taxation of costs is denied.

The nature of the claims alleged and their disposition are stated in detail in the court's prior orders.  (Docs. ## 193 and 280.)  In summary, Plaintiff John Killingsworth alleged various employment discrimination claims against his former employer Defendant State Farm Mutual Automobile Insurance Company and breach of contract,  promissory estoppel, and breach of the implied covenant of good faith and fair dealing for deferring, rather than granting immediately, his request for an independent agency.  Killingsworth contended that

1   when he was recruited as a management employee in 1980, he was promised an agency if

2   and when he terminated as an employee.  The court held any such claim was extinguished

3   by the integration clauses in several later-signed contracts. The parties discussed an agency

4   in June 2001, but State Farm's undisputed caveat in all those discussions that there were "no

5   promises" precluded any contractual obligations arising from those discussions.

6       Killingsworth also sued his co-employee Defendant Dave Gonzales for tortious

7   interference with his contractual relations with State Farm.  The court granted summary

8   judgment against this claim as well because, as a manager for State Farm acting within the

9   scope of his employment, Gonzales was not separate from State Farm and therefore could

10  not have interfered with the contract of a third party, a requirement for such liability. *Mintz*

11  *v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 905 P.2d 559 (Ariz. Ct. App. 1999);

12  *Barrow v. Ariz. Bd. of Regents*, 158 Ariz. 71, 761 P.2d 1435 (Ariz. Ct. App.  1988); *Payne*

13  *v. Pennzoil Corp.*, 138 Ariz. 52, 672 P.2d 1322 (Ariz. Ct. App. 1983).

14  **I.    THE EXTENT OF LIABILITY UNDER A.R.S. § 12-341.01(A) IN THIS CASE.**

15      The court in its discretion may award reasonable attorneys fees to the successful party

16  in "any contested action arising out of contract."  A.R.S. § 12-341.01(A).  State Farm and

17  Dave Gonzales seek award under this statute of their fees incurred in successfully defending

18  against Killingsworth's claims of breach of contract, promissory estoppel, breach of implied

19  covenant of good faith and fair dealing, and tortious interference with contract. The parties

20  disagree over which of these claims are compensable under the statute.

21      Killingsworth agrees that the breach of contract claim is within the scope of the

22  statute.  He has not disputed that the claim for breach of the implied covenant of good faith

23  and fair dealing is contractual and within the statute.  State Farm concedes that promissory

24  estoppel does not "arise out of contract" within the meaning of the statute, *Double AA*

25  *Builders, Ltd. v. Grand State Construction, LLC,* 210 Ariz. 503, 114 Ariz. 503, 114 P.3d 835

26  (Ariz. Ct. App. 2005), but argues that time spent resisting that theory is nevertheless

27  compensable because "interwoven" with the compensable breach of contract claim.

28  Killingsworth disputes  the compensability of the fees for defending the claim of tortious

1   interference with Killingsworth's employment contract with State Farm.  Killingsworth also

2   denies the adequacy of the proof that the fees claimed were incurred on compensable claims

3   and not other claims.

4       As to the claims for which the statute authorizes award of fees, the parties disagree

5   over whether proper discretion should lead to an award.

6       **A.   Promissory Estoppel Claim "Interwoven" With Breach of Contract.**

7       State Farm's otherwise uncompensable fees incurred on the promissory estoppel claim

8   cannot be awarded nonetheless as "interwoven" with the compensable fees incurred on the

9   breach of contract claim.  It is not enough for attorney fees recovery under A.R.S. § 12-

10  341.01(A) that tort (or other theories outside the statute) and contract liabilities be

11  "interwoven" in a transactional sense.  Rather, the non-compensable claim must be

12  interwoven with the breach of contract such that there would be no other liability without the

13  breach of contract liability.  *Sparks v. Republic National Life Insur. Co.,* 132 Ariz. 529, 543,

14  647 P.2d 1127, 1131 (1982).  The court of appeals restated this in *Bar J Bar Cattle Co. v.*

15  *Pace,* 158 Ariz. 481, 486, 763 P.2d 545, 550 (Ariz. Ct. App. 1988), as "where a single act

16  constitutes both a tort and a breach of contract" and the tort claim could not exist but for the

17  breach of contract.  This test was expanded in *Marcus v. Fox,* 150 Ariz. 333, 684, 723 P.2d

18  682, 336 (1986), to "include those cases in which a contract is entered into and later found

19  void due to a claim of fraudulent inducement."  The Arizona cases are well reviewed and

20  summarized by Judge Ackerman in *Ramsey Air Meds, LLC v. Cutter Aviation, Inc.,* 198 Ariz.

21  10, 15, 6 P.3d 315, 320 (App. 2000):

22      From these authorities, we distill the following principles for determining whether
    a tort claim "arises out of a contract." In analyzing this issue, the court should look to
23  the fundamental nature of the action rather than the mere form of the pleadings. The
    existence of a contract that merely puts the parties within tortious striking range of
24  each other does not convert ensuing torts into contract claims. Rather, a tort claim will
    "arise out of a contract" only when the tort could not exist "but for" the breach or
25  avoidance of contract. When the duty breached is one implied by law based on the
    relationship of the parties, that claim sounds fundamentally in tort, not contract. In
26  such cases, it cannot be said that the plaintiff's claim would not exist "but for" the
    contract. The test is whether the defendant would have a duty of care under the
27  circumstances even in the absence of a contract.

28

1    A promissory estoppel claim plainly can exist without a breach of contract. *Double*

2  *AA Builders, Ltd. v. Grand State Construction, LLC,* 210 Ariz. 503, 114 Ariz. 503, 114 P.3d

3  835 (Ariz. Ct. App. 2005). Indeed, its role is to provide an equitable remedy when there is

4  no contract to breach. State Farm's attorneys fees incurred solely on the promissory estoppel

5  claim may not be awarded under A.R.S. § 12-341.01(A).

6          **B.    Tortious interference with contract.**

7          Claims for tortious interference with contract generally do not come within the reach

8  of A.R.S. § 12-341.01(A) because the duty not to interfere is imposed by law, rather than by

9  contract. *Bar J Bar Cattle Co. v. Pace,* 158 Ariz. 481, 486, 763 P.2d 545, 550 (Ariz. Ct.

10  App. 1988). But that generalization may not be the end of the inquiry for a case like this in

11  which the tortious interference claim was asserted against an employee (Gonzales) of the

12  contracting party (State Farm) for allegedly causing his employer to breach its contract with

13  the plaintiff. Gonzales was granted summary judgment precisely because he cannot be

14  personally liable for breaching or inducing breach of his employer's contract, acting in the

15  course and scope of his employment. In this case the manager is the employer, so there is

16  no third party, which is the gist of the action for tortious interference. (Doc. # 193, pp. 8-10.)

17  In these circumstances the supposed tort of interference with the contract collapses into the

18  claim of breach of contract itself.

19          Authority for Gonzales' position is found in *Rutledge v. Arizona Board of Regents*,

20  147 Ariz. 534, 557, 711 P.2d 1207, 1230 (Ariz. Ct. App. 1985), affirming an award of fees

21  to an employer sued in *respondeat superior* and managers sued for tortious interference with

22  their employer's contract. The opinion held the tort could not exist without the breach of

23  contract–a rationale later rejected in *Ramsey Air Meds* in light of intervening Arizona

24  Supreme Court authority in *Barmat v. John and Jane Doe Partners A-D*, 155 Ariz. 519, 474

25  P.2d 1218 (1987). While the stated rationale of *Rutledge* is now muted, the case has not

26  been overruled explicitly, and its facts are materially identical to those of this case.

27          A corporation is a fictional principal which can act only through its agents, mostly

28  natural persons. A suit against a corporate employee/manager for causing his corporation

in the course and scope of his employment to breach its contract proves too much if it proves anything.  Corporate agents are not personally liable for their corporations' breaches of contract effectuated by the agent. *Restatement (Second) of Agency* § 328 (1958).  In *Rutledge* as in this case, the interference tort against the corporate agents for being the breaching instrument is invalid because it draws a personal tort out of nothing more than the corporation's breach of contract.  Stripped of its false dressing in tort, it is an attempted liability in contract.  Thus understood, *Rutledge* on its facts is probably still good law in Arizona.  Assertion of a tort of interfering with one's own contract is an invalid attempt to extend contract duty, not just a tort that missed the mark.  The invalidity of the tort is the counterpart to the contract law principle that the agents of their principals' contract breaches are not liable for their principals' breaches.  Thus the rejection of the fallacious tort theory flows from the recognition of the true boundaries of contract law.

Absent an overruling of *Rutledge*, a successful agent sued for interfering with the contract he administers for his principal has sufficiently vindicated rights arising out of contract to recover fees under A.R.S. § 12-341.01(A).  Whether it is sufficient that he proved no breach of contract, as in *Rutledge*, in this case the employee also defeated the fallacious tort theory for its clash with contract doctrine.  Therefore, Gonzales may be awarded fees incurred in defending against the tortious interference claim in the circumstances of this case.

## II.  EXERCISE OF DISCRETION.

The factors concerning exercise of its discretion to award fees under A.R.S. § 12-341.01(A) are stated in *Associated Indemnity Corp v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).  The principal considerations are as follows.

1. The merits of the unsuccessful party's claim.  State Farm prevailed entirely and  on the substantive merits.  That factor weighs substantially in favor of a fee award.

2.  Whether the successful party's efforts were superfluous in achieving the ultimate result.  Killingsworth rejected an early settlement offer of $90,000, so State Farm's efforts were essential to achieving the result it did.  This factor weighs substantially in favor of a fee award.

3.   Whether assessing fees against the unsuccessful party would cause extreme hardship. Killingsworth concedes that an award would not be an extreme hardship.  This is a commercial dispute between commercial parties.  This factor does not weigh against a fee award.

4. Whether the successful party prevailed with respect to all relief sought. This factor weighs in favor of a fee award.

5.   Whether the legal question presented was novel or had been previously adjudicated.  The case presented a novel but preliminary question of the meaning of the one-year statute of limitations in A.R.S. § 12-541(3).  The direction in which this factor pulls is uncertain.  Though Killingsworth prevailed on that issue, State Farm prevailed on the contract claims on the merits.  In general a party who prevails is entitled to award of all fees incurred even though some issues were unsuccessful.

6.  Whether a fee award would discourage other parties with tenable claims from litigating.  This factor does not weigh against a fee award, as Killingsworth's contract claims were not tenable.

These factors show much in favor of an award and little or nothing against an award. The court therefore exercises its discretion to award fees to State Farm and Dave Gonzales pursuant to A.R.S. § 12-341.01(A) in the amount otherwise shown to be occasioned by the contract claims.

III.    **QUANTIFICATION OF RECOVERABLE FEES.**

The court has previously noted that this case has been hard fought.  (Doc. # 262, p. 4.)  Defendant incurred $868,409.43 in fees and disbursements through the November 29, 2005 billing.   While this may be a very high defense cost for an employment case, Killingsworth's settlement demand was $7,450,000,00, and he has not questioned the reasonableness of this level of defense in light of his own initiatives in the case. Killingsworth does not dispute the reasonableness of the hourly rates State Farm claims, and the court finds them to be reasonable for the Phoenix market.

State Farm seeks $75,697 of those fees as allocable to the breach of contract, promissory estoppel, breach of implied covenant of good faith and fair dealing, and interference with contract claims.  In reaching this number, State Farm "assumed" that a quarter of all fees and expenses incurred before dismissal of the tortious interference claim and one sixth of the fees and expenses incurred thereafter "were related to the contract claim."  (Doc. # 283, p. 3.)  However, State Farm seeks all of the fees incurred on the issue of statute of limitations for the contract claims and all the fees incurred concerning damages.

State Farm's contention that a stated percentage of all time incurred in the general defense of the case is allocable to the contract must meet the fee claimant's duty under LRCiv 54.2(e)(2) to "adequately describe the services rendered so that the reasonableness of the charge can be evaluated."  Where a district court, as finder of fact, can make such an allocation and does so with basis, it will be upheld on appeal.  *Salstrom v. Citicorp Credit Services, Inc.*, 74, 183, 185 F.3d (9th Cir. 1996); *Hudson v. Moore Business Forms, Inc.*, 898 F.2d 684, 686-87 (9th Cir. 1990) (frivolous prayer for $4.2 million in damages "and the legal claims were so closely connected that it was appropriate to allocate 25% [17.27 hours] of the time spent investigating the claims to the sanction award" for the frivolous damage prayer).  The authorities do not, however, authorize this court to quantify fees on whim, hunch, or assumption.  The burdens of proof and persuasion as to the amount of fees incurred because of the qualifying contract claims are with the claimant.

This court has studied all of the 192 submitted time entries, and with the added benefit of that study it cannot directly determine what portion of the total fees in the general defense of the case were incurred on the contract claims.  Moreover, it was feasible to record time to support a claim for the legal services added to this case by the contract claims.  Defendant was aware from the outset of the prospect of fee recovery under A.R.S. § 12-341.01(A) for the contract claims.  Marginal services expended on those claims could have been quantified in the time records. The Local Rules of this Court require fee applications to state "[t]he time devoted to each individual unrelated task performed on such day."  LRCiv 54.2(e)(1)(B).

While State Farm has not block billed unrelated tasks, it could have noted what portion of a task related to the fee-recoverable claims.

Having failed to segregate most of the recoverable from the non-recoverable time when recording it, the working lawyers and paralegals have also failed to construct an after-the-fact allocation. While such estimates could not be perfect on every time entry, they could be adequate in general because made with diligence, in good faith, and with attention to counsel's professional responsibility and their oath. When the working lawyers and paralegals themselves, who are best able to do so, have not undertaken to estimate how much of their work, within a given description on a given day or by broader categories, was expended on recoverable matters, they cannot expect the court to do it for them. LRCiv 54.2.

While it is apparent that State Farm did substantial work concerning damages on the contract claim, it is not apparent, and State Farm does not explain, why all the damage work in the case should be recoverable under the contract claim. Nor has State Farm informed the court of what damage work was done by which damage experts.

Another consideration is whether the inherent conservatism of the fee application–9% of the total defense cost–supports the request as a reasonable allocation. The court's own review of all the submitted time entries based on the narrative descriptions yields the following times and amounts directly allocable to the qualifying contract claims, without apportionment to non-contract claim work:

| Date | Initials | Hours | Rate | Amount |
|---|---|---|---|---|
| 10-23-03 | DJS | 3.6 hours | 175 | $ 630.00 |
| 11-06-03 | DJS | 2.3 hours | 175 | $ 402.50 |
| 2-20-04 | DJS | 1.0 hours | 175 | $ 175.00 |
| 2-24-04 | LVB | 0.5 hours | 110 | $ 55.00 |
| 2-24-04 | DJS | 0.3 hours | 175 | $ 52.50 |
| 3-08-04 | LVB | 1.2 hours | 110 | $ 132.00 |
| 3-09-04 | LVB | 1.2 hours | 110 | $ 132.00 |
| 5-10-04 | MSS | 6.9 hours | 180 | $ 1,242.00 |
| 6-03-04 | DJS | 1.8 hours | 175 | $ 315.00 |
| 6-04-04 | DJS | 2.1 hours | 175 | $ 367.50 |
| 6-08-04 | DJS | 2.6 hours | 175 | $ 455.00 |
| 6-10-04 | DJS | 1.1 hours | 175 | $ 192.50 |
| 7-09-04 | MTC | 3.0 hours | 225 | $ 675.00 |
| 7-12-04 | LVB | 0.4 hours* | 110 | $ 44.00 |
| 7-12-05 | MTC | 4.3 hours* | 225 | $ 967.50 |
| 7-13-04 | MTC | 8.5 hours* | 225 | $ 1,912.50 |
| 7-13-04 | MDM | 0.5 hours* | 275 | $ 137.50 |

- 8 -

| | | | | | |
|---|---|---|---|---|---|
| 7-22-04 | MDM | 1.0 hours* | 275 | $ | 275.00 |
| 8-31-04 | LVB | 0.9 hours | 110 | $ | 99.00 |
| 8-31-04 | MTC | 1.5 hours | 225 | $ | 337.50 |
| 9-12-04 | MSS | 1.6 hours | 180 | $ | 288.00 |
| 9-14-04 | MSS | 3.1 hours | 180 | $ | 558.00 |
| 9-15-04 | MSS | 4.9 hours | 180 | $ | 882.00 |
| 9-17-04 | CLC | 1.0 hours | 275 | $ | 275.00 |
| 9-17-04 | MSS | 5.2 hours | 180 | $ | 936.00 |
| 9-20-04 | LVB | 0.3 hours | 110 | $ | 33.00 |
| 9-20-04 | CLC | 1.0 hours | 275 | $ | 275.00 |
| 9-20-04 | MSS | 5.9 hours | 180 | $ | 1,062.00 |
| 9-21-04 | MSS | 7.1 hours | 180 | $ | 1,278.00 |
| 9-21-04 | TJW | 8.4 hours | 110 | $ | 924.00 |
| 9-22-04 | TJW | 5.8 hours | 110 | $ | 638.00 |
| 9-22-04 | MSS | 7.8 hours | 180 | $ | 1,404.00 |
| 9-23-04 | MSS | 6.3 hours | 180 | $ | 1,134.00 |
| 9-25-05 | MSS | 3.1 hours | 180 | $ | 558.00 |
| 9-27-04 | MSS | 3.8 hours | 180 | $ | 684.00 |
| 10-01-04 | MSS | 5.0 hours | 180 | $ | 900.00 |
| 10-04-04 | LVB | 3.8 hours | 110 | $ | 418.00 |
| 11-04-04 | TJW | 1.0 hours | 110 | $ | 110.00 |
| 11-05-04 | TJW | 2.2 hours | 110 | $ | 242.00 |
| 11-07-04 | MSS | 1.7 hours | 180 | $ | 306.00 |
| 11-08-04 | MSS | 0.5 hours | 180 | $ | 90.00 |
| 11-09-04 | MSS | 0.7 hours | 180 | $ | 126.00 |

Total:                                                          $21,720.00
* tortious interference claim

This review also leaves the court firmly convinced that the contract claim work includes substantial additional services encompassed within the general time entries for discovery, briefing, court appearances, damage preparation, and other matters. The conservatism of the fee request together with the certainty that the fees allocable to the contract claims substantially exceed the above enumeration of time entries solely addressed the contract claim persuade the court that a just assessment of fees is $50,000.00. In reaching this number, the court resolves doubts in Killingsworth's favor and further exercises its discretion to reach a conservative award.

. . .

. . .

. . .

. . .

. . .

IT IS THEREFORE ORDERED that Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses (doc. # 283) and Memorandum (doc. # 294) are granted in the amount of $50,000.00.  The clerk shall enter judgment pursuant to Rules 54(d)(2) and 58 in favor of Defendants State Farm Mutual Automobile Insurance Company and Dave Gonzales against  Plaintiff John Killingsworth in the amount of $50,000.00.

DATED this 16th day of February 2006.

_____
Neil V. Wake
United States District Judge